LATHAM & WATKINS LLP
  G. Andrew Lundberg (SBN 108509)
    andy.lundberg@lw.com
  Alexandra A. Roje (SBN 220027)
    alex.roje@lw.com
355 South Grand Avenue, Suite 1500
Los Angeles, California 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

Attorneys for Plaintiff
Los Angeles Dodgers LLC

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOS ANGELES DODGERS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation,<br>Defendant. | CASE NO. CV-08-8082 JFW (CTx)<br><br>**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, DECEIT, AND UNFAIR BUSINESS PRACTICES; DEMAND FOR JURY TRIAL** |

Plaintiff Los Angeles Dodgers LLC, for its First Amended Complaint against the above-named defendant ACE American Insurance Company, alleges as follows:

## SUMMARY

1. Plaintiff Los Angeles Dodgers LLC (formerly named "LA TeamCo," and hereinafter referred to as the "Dodgers") operates the Los Angeles Dodgers, a Major League Baseball team based in Los Angeles since 1958. This case arises out of the Dodgers' claim for insurance benefits owing under an insurance policy

issued by the defendant insurance company. The policy promised to insure the Dodgers against the risk of disability of one of its starting pitchers, Jason Schmidt. The insurer has failed to pay a substantial portion of its obligations under the policy, leaving more than $9.2 million of the Dodgers' loss unpaid.

## BACKGROUND

2. In order to compete successfully against other Major League Baseball clubs, the Dodgers endeavor to recruit, develop and retain elite professional baseball players. As in professional sports generally, over the years, the competitive marketplace for such players' services has led to multi-year, multi-million-dollar contracts. These contracts are often made on a "guaranteed" basis: the contract provides that the player will be compensated for his services for the duration of the contract even if he is physically disabled, as the result of a sports injury or otherwise, from performing at the Major League level.

3. Teams that enter into such guaranteed contracts face exposure to paying tens of millions of dollars in salary to players who become unable to play for months or even years or, in some cases, are permanently disabled from continuing their baseball careers. Like other Major League Baseball teams (and other professional sports organizations), therefore, the Dodgers sometimes seek to protect themselves from such risks by insuring their obligations under guaranteed player contracts. By transferring to an insurance company a portion of the risk of having to pay a disabled player under a guaranteed contract, the club obtains the assurance that the disability of a highly-paid player will be mitigated by the insurer's payment of part of the club's loss.

4. In late 2006, the Dodgers acquired the services of Jason Schmidt, who was then widely regarded as one of the most talented and effective starting pitchers in Major League Baseball. At the time, Mr. Schmidt was a 12-year Major League veteran who had spent the previous five seasons with the San Francisco Giants, being named to the National League All Star team in three of those five seasons

including 2006. During the 2006 season, Mr. Schmidt had tied a 102-year-old Giants franchise record by striking out 16 batters in one game. The Dodgers entered into a guaranteed contract with Mr. Schmidt that provided total payments of $47 million over the three-year term of the contract.

5. In order to protect themselves against the risk that Mr. Schmidt might become disabled from performing during the period of his contract, the Dodgers purchased coverage under a policy of insurance issued by defendant ACE American Insurance Company ("ACE"). The ACE policy provided generally that in the event Mr. Schmidt became temporarily or permanently disabled from performing his profession as a Major League Baseball pitcher, ACE would reimburse the Dodgers a specified sum, ranging between $63,000 to $66,000, for each day of that disability, subject to various terms and conditions, up to a stated limit.

6. Shortly after the start of the 2007 season, Mr. Schmidt suffered a shoulder injury that resulted in his missing most of the 2007 and 2008 baseball seasons. ACE, while acknowledging that Mr. Schmidt had suffered "Total Disability" insured under the Policy, contends that a "Special Condition Limitation" contained in the Policy, which restricts coverage for instances of "disability arising from the right shoulder as pertains to conditions, afflictions and consequences of the rotator cuff" in Mr. Schmidt's right shoulder, limited the number of days of disability for which the Dodgers may recover benefits.

7. The Special Condition Limitation does not apply to Mr. Schmidt's disability. Notwithstanding the medical evidence -- including the opinion of ACE's own retained orthopedic specialist -- confirming that fact, ACE persists in invoking the Special Condition Limitation to deny the Dodgers full recovery under the Policy. The Dodgers accordingly bring this action to recover the insurance proceeds ACE owes, as well as their other recoverable damages and other appropriate relief.

## THE PARTIES

8. Plaintiff Los Angeles Dodgers LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California, and operates the Los Angeles Dodgers Major League Baseball franchise. The sole member of Los Angeles Dodgers LLC is Los Angeles Dodgers Holding Company LLC, a Delaware limited liability company with its principal place of business in Los Angeles, California. The sole member of Los Angeles Dodgers Holding Company LLC is LA Holdco LLC, a Delaware limited liability company with its principal place of business in Los Angeles, California. The sole member of LA Holdco LLC is LA Partners LLC, a Delaware limited liability company with its principal place of business in Los Angeles, California. The sole member of LA Partners LLC is The McCourt-Broderick Limited Partnership, a Massachusetts limited partnership with its principal place of business in Los Angeles, California. The general partner of The McCourt-Broderick Limited Partnership is The McCourt Company, Inc., a Delaware corporation with its principal place of business in Los Angeles, California; the sole other partner of The McCourt-Broderick Limited Partnership is Frank H. McCourt, Jr., a California resident.

9. The Dodgers are informed and believe, and on that basis allege, that defendant ACE is, and at all times material to this action was, a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania, and transacting the business of insurance in the State of California.

## JURISDICTION

10. This Court has jurisdiction of the subject matter of this action under 28 U.S.C. § 1332(a), in that the matter in controversy in this action exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

11. Venue lies in this District under 28 U.S.C. § 1391(a), in that a substantial part of the events and omissions giving rise to the claims asserted

herein occurred in this District.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

### The Policy

12. The Dodgers refer to and incorporate by reference the allegations contained in paragraphs 1 through 11 of this Complaint as though fully set forth herein.

13. Effective February 24, 2007, ACE issued its policy of "Employer Purchased Athlete's Individual Total Disability Policy," policy number N01031612 (the "Policy"), to the Dodgers covering Jason Schmidt. The "Termination Date" specified in the Policy was October 15, 2009 "or the end of the team's last official 2009 Regular Season day, whichever is soonest." The Policy thus provided the Dodgers with coverage for the 2007, 2008 and 2009 seasons.

14. A true and complete copy of the Policy, exclusive of the application and player contract originally submitted in connection with the Dodgers' purchase of the Policy, is attached hereto as Exhibit A.

15. ACE promised in the Policy to indemnify the Dodgers against loss resulting from Mr. Schmidt's total disability, as defined in the Policy, according to the Policy's terms and conditions.

16. At the time the Dodgers entered into the Policy with ACE, both the Dodgers and ACE were aware that Mr. Schmidt had for some time during his career with the San Francisco Giants been suffering from a partial tear of the rotator cuff in his right (pitching) shoulder. Major League pitchers often experience such partial rotator cuff tears but nevertheless remain competitive and effective, as Mr. Schmidt had demonstrated himself to be during the 2006 season immediately prior to joining the Dodgers. The Dodgers therefore did not find Mr. Schmidt's preexisting rotator cuff condition to exclude him from consideration as a team member.

17. Nor, likewise, did ACE consider Mr. Schmidt's preexisting rotator cuff condition to exclude him from consideration for insurance. Indeed, although insurers commonly exclude injuries to specified body parts entirely from coverage, in order to secure the nearly $2.5 million premium it charged the Dodgers, ACE agreed in the Policy that it would (a) fully cover disability resulting from non-rotator-cuff injuries to Mr. Schmidt's right shoulder, and (b) even cover disability resulting from rotator-cuff injuries, albeit on a more restricted basis.

18. Specifically, ACE issued the Policy with no limitations on coverage relating to Mr. Schmidt's right shoulder other than a "Special Condition Limitation" that affected the length of the "Elimination Period" -- in effect, the deductible -- that would apply to specified injuries only. The Elimination Period generally applicable to instances of disability under the Policy is 90 regular season days, the first 45 of which must be consecutive. The Special Condition Limitation provided that for "disability arising from the right shoulder as pertains to conditions, afflictions and consequences of the rotator cuff," a special 182-consecutive-day Elimination Period would apply.

19. Thus, ACE agreed to provide full coverage (i.e., the same coverage generally provided for disability under the Policy) for disability arising from Mr. Schmidt's right shoulder, so long as the disability did not arise from "the right shoulder as pertains to conditions, afflictions and consequences of the rotator cuff."

### The Shoulder Injury and Resulting Total Disability

20. Mr. Schmidt began the 2007 season as a starting pitcher on the Dodgers' 25-man roster, and started three games for the team at the beginning of the season. However, on April 17, 2007 he was placed on the Disabled List, retroactive to April 15, 2007, due to problems with his right shoulder. He missed the next 45 games due to the shoulder injury.

21. After undergoing therapy and a minor league rehabilitation assignment, Mr. Schmidt returned to the lineup on June 5, 2007 -- having thus

missed more than 45 consecutive regular season days for purposes of the Elimination Period under the Policy.

22. However, Mr. Schmidt continued to experience difficulty with his right shoulder, and returned to the Disabled List on June 18, 2007, retroactive to June 17, 2007. On June 20, 2007, he underwent surgery on the shoulder.

23. Mr. Schmidt remained disabled for the balance of the 2007 season. Accordingly, on July 27, 2007, he satisfied the 90-day Elimination Period under the Policy.

24. Mr. Schmidt remained disabled during the entire 2008 season due to his right shoulder. In September 2008, he underwent further surgery on the shoulder.

### The Dodgers' Claim for Coverage

25. Following the satisfaction of the 90-day Elimination Period on July 27, 2007, the Dodgers on August 22, 2007 submitted the Proof of Disability Form required by ACE to process a claim for benefits under the Policy. The Dodgers sought coverage under the ACE policy for amounts paid to Mr. Schmidt under his contract during the period beginning July 27, 2007 and thereafter for as long as benefits continued under the policy -- currently through the last day of the 2008 regular baseball season.

26. ACE responded to the Dodgers' Proof of Disability by letter dated September 5, 2007. ACE did not dispute that Mr. Schmidt was then "Totally Disabled," as defined in the ACE policy. However, ACE there maintained, and has since continued to maintain, that the Special Conditional Limitation provision applied to that disability. According to ACE, the Dodgers as a result did not become entitled to benefits on account of Mr. Schmidt's ongoing disability until June 16, 2008 -- i.e., the date on which Mr. Schmidt had been disabled for 182 consecutive days.

////

27. Since July 15, 2008, ACE has made payment to the Dodgers for Mr. Schmidt's days of disability from June 15, 2008 forward. However, ACE refuses, on the basis of the Special Condition Limitation, to make payment for any of the 143 days of disability occurring between July 27, 2007 and June 16, 2008 that are covered because the 90-day general Elimination Period, and not the 182-consecutive-day period provided by the Special Condition Limitation, applies to the disability. As a result, the Dodgers have paid Mr. Schmidt in excess of $9.2 million in salary for those 143 missed days of service, but have received no benefits under the ACE Policy for them.

28. ACE received payment of the full premium it charged for the Policy.

29. The Dodgers have complied with all other terms and conditions of the Policy required on their part to be performed and whose performance is not otherwise excused.

30. By failing to make timely, or any, payment of the benefits due under the Policy for the periods of covered disability occurring between July 27, 2007 and June 16, 2008, ACE has breached the contract represented by the Policy.

31. As a proximate result of ACE's breach of the Policy, the Dodgers have been damaged in an amount not less than $9,267,882 (representing 65 days of disability during the 2007 season at $65,934 per day, plus 78 days of disability during the 2008 season at $63,874 per day), plus the time value of the unpaid funds from the date of ACE's breach to the present.

## SECOND CLAIM FOR RELIEF

**(Breach of the Covenant of Good Faith and Fair Dealing)**

32. The Dodgers incorporate by reference the allegations contained in paragraphs 1 through 31 of this Complaint as though fully set forth herein.

33. ACE's continuing failure to pay benefits under the Policy is not only mistaken but unreasonable, and reflects ACE's failure to give at least equal regard to the interests of the Dodgers in obtaining payment of the subject insurance

benefits as the regard ACE gave to its own interests in avoiding payment, in breach of the implied covenant of good faith and fair dealing.

34. Without limitation, ACE has breached the covenant of good faith and fair dealing:

(a) by refusing to pay the Dodgers' claim under the Policy without a reasonable basis for that refusal;

(b) by failing to apply the Policy in a reasonable, evenhanded manner in light of all of the evidence available, including without limitation by electing to apply the Policy in a manner that transmutes a facially limited exception to coverage dealing with Mr. Schmidt's right rotator cuff into a broad, all-encompassing limitation triggered by any injury to Mr. Schmidt's right shoulder whatsoever;

(c) by conducting its claim investigation and evaluation with the purpose of avoiding, rather than finding, coverage for the Dodgers' loss under the Policy. Among other conduct, ACE solicited the opinion of a "peer reviewer" orthopedist whom it engaged to review the records of Mr. Schmidt's condition and medical treatment, but then (i) evidently failed to ask the reviewer questions designed to elicit an opinion on the facts material to the Dodgers' claim for coverage, and (ii) disregarded the opinion of the reviewer when such opinion in fact ultimately supported the Dodgers' claim;

(d) by interpreting the Policy in a manner that depends upon the assignment of meaning to policy terms which, under a reading of the Policy as a whole and in view of the Policy's purposes, they do not reasonably bear; and

(e) by failing to respond reasonably, completely and in good faith to the Dodgers' inquiries concerning ACE's coverage position, including without limitation by falsely claiming an inability to provide the Dodgers with the report of its "peer reviewer."

////

35. ACE's improper object in so conducting itself was, on information and belief, at all times to delay, and if possible in whole or in part avoid, payment of the Dodgers' legitimate claim for insurance benefits for the period from July 27, 2007 to June 15, 2008.

36. As a proximate result of ACE's conduct, the Dodgers have suffered damage as herein alleged, and have incurred substantial additional costs, including but not limited to their attorneys' fees, expenses and costs incurred in seeking to mitigate and remedy ACE's breach of contract by the filing and conduct of this action and otherwise, in an amount as yet to be ascertained, all to be proved at or before the time of trial.

37. ACE's conduct with respect to the aforementioned acts and omissions was fraudulent, oppressive, and on information was undertaken with malice. On information and belief, the officers, directors, and/or managing agents of ACE, directed, or were aware of and ratified, such conduct, such that the conduct of its employees and agents is properly imputed to ACE itself.

38. By reason of the foregoing, the Dodgers are entitled to recover, in addition to their actual damages, damages for the sake of example, to punish ACE for its misconduct in this matter, and to deter any such future misconduct.

### THIRD CLAIM FOR RELIEF
### (Deceit)

39. The Dodgers incorporate by reference the allegations contained in paragraphs 1 through 38 of this Complaint as though fully set forth herein.

40. As an inducement to the Dodgers to enter into the Policy, ACE led the Dodgers to believe that coverage for injuries to Mr. Schmidt's right shoulder would be specially restricted only in instances in which Mr. Schmidt suffered disability arising from certain specified injuries, but not all injuries, to the shoulder. ACE did so by falsely representing, in the Policy, and in its letter of April 23, 2007 explaining why it had imposed the Special Condition Limitation (a

true and complete copy of which letter is attached as Exhibit B hereto), that coverage would be restricted only with respect to "the right shoulder as pertains to conditions, afflictions and consequences of the rotator cuff."

41. In agreeing to purchase the Policy, the Dodgers reasonably relied upon ACE's representations that coverage for injuries to Mr. Schmidt's right shoulder would be restricted only in the circumstances specified, and would otherwise be afforded on the terms generally applicable under the policy, including the 90-day elimination period.

42. On information and belief, at the time it made the foregoing representations, ACE had no intention of making payment under the Policy for any disability involving Mr. Schmidt's right shoulder, whether or not it involved "the right shoulder as pertains to conditions, afflictions and consequences of the rotator cuff," except under the coverage-reducing provisions of the Special Condition Limitation. Accordingly, ACE's representations as to the extent of coverage it intended to provide under the Policy were false, and ACE knew them to be false, at the time they were made.

43. As a proximate result of ACE's fraudulent conduct, the Dodgers have suffered damage as alleged hereinabove.

44. On information and belief, the officers, directors, and/or managing agents of ACE, directed, or were aware of and ratified, such conduct, such that the conduct of its employees and agents is properly imputed to ACE itself.

45. By reason of the foregoing, the Dodgers are entitled to recover, in addition to their actual damages, damages for the sake of example, to punish ACE for its misconduct in this matter, and to deter any such future misconduct.

### FOURTH CLAIM FOR RELIEF

**(Unfair Business Practices)**

46. The Dodgers incorporate by reference the allegations contained in paragraphs 1 through 45 of this Complaint as though fully set forth herein.

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, ETC.

47. The Dodgers bring this claim for relief in their individual capacity.

48. The acts and practices alleged hereinabove constitute acts of unfair competition as defined by California Business and Professions Code Section 17200 in that they are unlawful, unfair and fraudulent, as follows:

    (a) It is unlawful under Section 780 of the California Insurance Code for an insurer to misrepresent the terms of an insurance policy or the benefits or privileges promised thereunder;

    (b) It is unfair to engage in the practices as heretofore alleged, because they deprive policyholders of the insurance coverage they intend to purchase and believe they have purchased; and

    (c) It is fraudulent to misrepresent the terms of an insurance policy or the benefits or privileges promised thereunder.

49. ACE's unlawful, unfair and fraudulent practices, as described above, present a continuing threat to the Dodgers and other insurance policyholders, in that the risk of loss presented by such conduct is one that may go unrecognized, leading the policyholder to believe that it has purchased insurance coverage which ACE in fact does not intend to and will not provide.

## **PRAYER FOR RELIEF**

Wherefore, the Dodgers pray for judgment as follows:

**On their First Claim for Relief:**

1. For compensatory damages in the amount of $9,267,882, being the insurance benefits owing but remaining unpaid under the Policy for the period from July 27, 2007 to June 15, 2008;

**On their Second Claim for Relief:**

2. For compensatory damages in the amount of their costs, fees and expenses incurred as a result of their efforts to reduce or avoid their damages as a result of defendant's conduct, including without limitation all amounts expended in pursuit of this action, as proven at or before trial;

3.    For exemplary and punitive damages, to punish defendant and to deter future misconduct by defendant and persons who are similarly situated;

**On their Third Claim for Relief:**

4.    For compensatory damages in the amount of the insurance benefits owing but remaining unpaid under the Policy for the period from July 27, 2007 to June 15, 2008;

5.    For exemplary and punitive damages, to punish defendant and to deter future misconduct by defendant and persons who are similarly situated;

**On their Fourth Claim for Relief:**

6.    Pursuant to California Business and Professions Code Section 17203, and under the equitable powers of the Court, for an order permanently enjoining ACE from committing, aiding, abetting or inducing the commission of the unfair business practices alleged herein, and specifically, from marketing, selling or enforcing policies including provisions substantially similar to the Special Condition Limitation;

7.    Pursuant to California Business and Professions Code Section 17203, and under the equitable powers of the Court, for an order directing the restoration to the Dodgers of all funds and profits acquired from them by means of any act or practice described herein which is found by the Court to be unlawful, unfair or fraudulent within the meaning of that statute, including without limitation the premium paid for the Policy;

**On All of their Claims for Relief:**

8.    For their costs of suit incurred herein, including their reasonable attorneys' fees;

9.    For prejudgment and postjudgment interest at the legal rate on all sums awarded; and

////

////

10. For such other and further legal, equitable or other relief as this Court may deem just and proper.

Dated: December 30, 2008

LATHAM & WATKINS LLP
G. Andrew Lundberg
Alexandra A. Roje

By: *[signature]*
G. Andrew Lundberg

Attorneys for Plaintiff
Los Angeles Dodgers LLC

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues triable by jury.

Dated:  December 30, 2008

LATHAM & WATKINS LLP
G. Andrew Lundberg
Alexandra A. Roje

By: *[signature]*
_____
G. Andrew Lundberg

Attorneys for Plaintiff
Los Angeles Dodgers LLC