1  RICHARD B. GOETZ (S.B. #115666)
2  rgoetz@omm.com
   CATALINA J. VERGARA (S.B. #223775)
3  cvergara@omm.com
   O'MELVENY & MYERS LLP
4  400 South Hope Street
   Los Angeles, CA  90071-2899
5  Telephone:  (213) 430-6000
   Facsimile:   (213) 430-6407
6
7  Attorneys for Defendant
   ACE American Insurance Company
8
9
10
11            **UNITED STATES DISTRICT COURT**
12            **CENTRAL DISTRICT OF CALIFORNIA**
13

| | |
|---|---|
| LOS ANGELES DODGERS LLC, a Delaware limited liability company,<br><br>          Plaintiff,<br><br>     v.<br><br>ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation,<br><br>          Defendant. | Case No.  CV-08-08082 JFW (CTx)<br><br>**DEFENDANT ACE AMERICAN INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Complaint Filed:   December 8, 2008<br>Pre-Trial Conf.:    March 5, 2010<br>Trial:                    March 23, 2010<br><br>Hearing Date:      August 3, 2009<br>Time:                   1:30 p.m.<br>Place:                   Courtroom 16 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO PLAINTIFF LOS ANGELES DODGERS LLC AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that, on July 27, 2009, at 1:30 p.m. or as soon thereafter as counsel may be heard, before the Honorable John F. Walter of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California, defendant ACE American Insurance Company ("ACE") will and hereby does move for summary judgment or, in the alternative, partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## Motion for Summary Judgment

ACE's motion for summary judgment is brought on the ground that, under the plain language of the disability insurance policy (the "Policy") entered into between ACE and plaintiff Los Angeles Dodgers LLC ("Dodgers") to cover Dodgers starting pitcher Jason Schmidt, ACE is entitled to judgment in its favor on all of the Dodgers' claims as a matter of law, for two reasons.

First, even taking the Dodgers' factual contentions as true, the plain language of the Policy's "special condition limitation" applies to the Dodgers' claim for benefits. That provision applies a 182 consecutive-day elimination period for "any disability resulting from: The right shoulder as pertains to the conditions, afflictions and consequences of the rotator cuff." Here, it is undisputed that Schmidt's rotator cuff had a tear that was surgically repaired by the Dodgers' team physician in June 2007. Moreover, it cannot reasonably be disputed that Schmidt's rotator cuff, even if had been the only thing repaired in his June 2007 surgery, would have required a substantial amount of time to recuperate, during which Schmidt would have been "totally disabled." According to medical literature, the recuperation time would have been at least eight to twelve months.

1   Second, although the Policy contains both the "special condition limitation"

2   and a 90-day elimination period applicable to disabilities not resulting from the

3   rotator cuff, the Policy does not require the choice of one elimination period over

4   the other where two disabilities are involved.  Here, Mr. Schmidt suffered from two

5   disabilities, one which triggered the 90-day elimination period, the other which

6   triggered the 182-elimination period.  These elimination periods ran concurrently,

7   under the Policy's plain language.

8   Because all of the Dodgers' causes of action against ACE are premised on a

9   contention that the "special condition limitation" does not apply to their claim for

10  benefits, and that contention is wrong as a matter of law, ACE is entitled to

11  judgment in its favor on all of the Dodgers' causes of action.

12

13  **Motion for Partial Summary Judgment**

14  Should the Court decline to grant summary judgment in ACE's favor on all

15  of the Dodgers' claims, ACE moves, in the alternative, for partial summary

16  judgment on a discrete legal issue: whether the Dodgers bear the burden of proving

17  their contention that they are entitled to benefits under the 90-day "elimination

18  period" in the Policy rather than the 182-day "special condition limitation."  Under

19  California law, because the elimination periods in the Policy are properly

20  categorized as conditions of coverage, not exclusions, the Dodgers bear the burden

21  of proving the conditions have been met in order to be entitled to benefits.

22  Moreover, the Dodgers must show the correct elimination period has been met.

23  These burden of proof questions need not be reached unless the Court denies

24  ACE's motion for summary judgment on all of the Dodgers' causes of action.  For

25  that reason, ACE proposed to the Dodgers that ACE's motion for summary

26  judgment be noticed for hearing first, and that the parties later file cross-motions on

27  the burden of proof.[1]  The Dodgers declined ACE's proposal and elected to file

28  ---

[1] The Dodgers initially agreed that ACE's motion for summary judgment should be

CV-08-08082 JFW (CTx)
DEF.'S MOTION FOR
SUMMARY JUDGMENT

1   their burden of proof motion first.  That motion is set for hearing on July 27, 2009.

2   ACE respectfully requests that the Court consider the parties' motions

3   simultaneously, because they address related issues.

4                                  \*       \*       \*

5       ACE's motion for summary judgment or, in the alternative, partial summary

6   judgment is based on: (i) this Notice of Motion and Motion for Summary

7   Judgment; (ii) the Memorandum of Points and Authorities filed herewith;

8   (iii) ACE's Statement of Uncontroverted Facts and Conclusions of Law; (iv) the

9   Stipulation Regarding Evidence Submitted in Support of ACE's Motion for

10   Summary Judgment, filed under seal; (v) the Declaration of Jon Hyman, M.D.;

11   (vi) the Declaration of David F. McCreary; (vii) the pleadings and papers on file in

12   this matter; (viii) any other matters of which the Court may take judicial notice; and

13   (ix) any argument the Court may allow at the time of the hearing.

14       ACE's motion is made following the L.R. 7-3 conference of counsel.

15   Counsel met in person on May 4, 2009, and they have had numerous other

16   communications about this motion.

17

18

19       Dated:  July 13, 2009             RICHARD B. GOETZ
                                          CATALINA J. VERGARA

20                                           O'MELVENY & MYERS LLP

21

22                                By:  */s/ Richard B. Goetz*
                                            Richard B. Goetz

23

24                                Attorneys for Defendant
                               ACE American Insurance Company

25

26

27

28   decided first.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION..................................................................................1

II.   STATEMENT OF FACTS.....................................................................5

    A.   The Policy. .................................................................................5

    B.   Schmidt's disability....................................................................8

    C.   The Dodgers' claim for disability benefits. ...............................10

    D.   The Dodgers' suit.....................................................................12

III.  ACE IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR
    ON ALL OF THE DODGERS' CAUSES OF ACTION, ON THE
    GROUND THAT THE SPECIAL CONDITION LIMITATION
    APPLIES TO THE DODGERS' CLAIM AS A MATTER OF LAW........13

    A.   The Court must apply ordinary contract-interpretation principles
        in order to give effect to the Policy's plain meaning.........................14

    B.   Schmidt had a disability "resulting from: The right shoulder as
        pertains to conditions, afflictions and consequences of the
        rotator cuff.".....................................................................15

    C.   The 90-day elimination period and the 182-day special condition
        limitation period ran concurrently. .....................................17

IV.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT ACE'S
    MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE
    BURDEN OF PROOF. ............................................................18

    A.   The elimination periods in the Policy are conditions of coverage,
        not exclusions.....................................................................19

        1.   Under the Policy's plain language, the elimination periods
            are properly categorized as conditions of coverage. ...............19

        2.   Case law also supports a finding that elimination periods
            are conditions of coverage.....................................................21

        3.   It makes sense, as a matter of policy, for the Dodgers to
            bear the burden of persuasion.................................................22

    B.   The party that bears the burden of proof also has an obligation to
        prove that the right elimination period has been satisfied.................23

V.    CONCLUSION ...................................................................24

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*AIU Ins. Co. v. Super. Ct. (FMC Corp.),*
   51 Cal. 3d 807, 274 Cal. Rptr. 820 (1990) ............................................ 14, 15, 18

5

*Allenby v. Westaff, Inc.,*
   No. C 04-2423 TEH, 2006 WL 3648655 (N.D. Cal. Dec. 12, 2006) ............... 22

6

*Aydin Corp. v. First State Ins. Co.,*
   18 Cal. 4th 1183, 77 Cal. Rptr. 2d 537 (1998) ...................................... 19, 21, 22

7

*Bank of the West v. Super. Ct. (Indus. Indem. Co.),*
   2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538 (1992) ................................................ 14

8

*Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.,*
   18 Cal. 4th 857, 77 Cal. Rptr. 2d 107 (1998) ........................................... 14, 20

9

*Gin v. Pennsylvania Life Ins. Co.,*
   134 Cal. App. 4th 939, 36 Cal. Rptr. 3d 571 (2005) ........................................ 19

10

*Harrow Prods. v. Liberty Mut. Ins. Co.,*
   64 F.3d 1015 (6th Cir. 1995) ...................................................................... 22

11

*Kushner v. Lehigh Cement Co.,*
   572 F. Supp. 2d 1182 (C.D. Cal. 2008) ........................................................ 22

12

*Mitchell v. Ace American Insurance Co.,*
   265 F. App'x 420 (5th Cir. 2008) ................................................................ 21

13

*Modern Dev. Co. v. Navigators Ins. Co.,*
   111 Cal. App. 4th 932, 4 Cal. Rptr. 3d 528 (2003) .......................................... 23

14

*Powerine Oil Co., Inc. v. Super. Ct. (Cent. Nat'l Ins. Co. of Omaha),*
   37 Cal. 4th 377, 33 Cal. Rptr. 3d 562 (2005) ................................................ 14

15

*Silver v. Executive Car Leasing Long-Term Disability Plan,*
   466 F.3d 727 (9th Cir. 2006) ...................................................................... 21

16

*Wright v. Paul Revere Life Ins. Co.,*
   291 F. Supp. 2d 1104 (C.D. Cal. 2003) ......................................................... 19

17

## STATUTES

CAL. CIV. CODE § 1636 ................................................................................ 14

CAL. CIV. CODE § 1638 ................................................................................ 14

CAL. CIV. CODE § 1639 ................................................................................ 14

CAL. CIV. CODE § 1644 ............................................................................ 14, 15

17

18

19

20

21

22

23

24

25

26

27

28

- ii -

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3   CAL. HEALTH & SAFETY CODE § 1367.61 ................................................................ 20

4   CAL. HEALTH & SAFETY CODE § 1367.635 .............................................................. 20

5   CAL. INS. CODE § 10123.8 ......................................................................................... 20

6   CAL. INS. CODE § 10123.82 ....................................................................................... 20

7

**OTHER AUTHORITIES**

8   1 Eric Mills Holmes & Mark S. Rhodes, Holmes's Appleman on
      Insurance § 4.30 (2d ed. 1996) ........................................................................... 20

9

10  17A Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d §
      254:45 (3d ed. 2001) ............................................................................................ 22

11  Stedman's Medical Dictionary 18, 1714 (27th ed. 2000) ......................................... 8

12

**RULES**

13  FED. R. CIV. PROC. 56(c) .......................................................................................... 13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CV-08-08082 JFW (CTx)
DEF.'S MOTION FOR
SUMMARY JUDGMENT

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3        This matter arises out of a disability insurance policy (the "Policy") entered

4   into between the Dodgers and ACE.  The Dodgers acquired the Policy in early 2007

5   to cover one of their recently signed starting pitchers, right-hander Jason Schmidt.

6        Schmidt made only three starts before the Dodgers placed him on the

7   disabled list in April 2007 because of pain and stiffness in his right shoulder.  The

8   Dodgers reactivated him in June 2007, but he again started only three times before

9   the Dodgers returned him to the disabled list on June 18, 2007.  Two days later, on

10  June 20, 2007, Schmidt underwent arthroscopic surgery on his right shoulder.

11  During the surgery, the Dodgers' team physician repaired tears in Schmidt's rotator

12  cuff and labrum, two parts of his shoulder.  Later that season, the Dodgers

13  submitted a claim for disability benefits under the Policy.

14       The parties agree that Schmidt is "totally disabled" under the terms of the

15  Policy.  And they agree that the Dodgers are entitled to disability benefits.  But they

16  disagree on the amount of benefits due to the Dodgers.

17       The dispute centers on which "elimination period" in the Policy applies to the

18  Dodgers' claim.  An elimination period is the number of days of total disability that

19  must lapse before any disability benefits become payable under a policy.  In other

20  words, it is a waiting period that an insured must satisfy before it is eligible to

21  receive any disability benefits.  Because the Policy pays disability benefits for each

22  Regular Season day that Schmidt is totally disabled (at a daily rate between roughly

23  $63,000 and $66,000), the elimination period serves as a sort of deductible.

24       In this case, the Policy includes an elimination period of 90 regular season

25  days, the first 45 days of which must be consecutive.  But it also contains a 182

26  consecutive-regular-season-day "special condition limitation" that applies to "any

27

28

1  disability resulting from: The right shoulder as pertains to conditions, afflictions

2  and consequences of the rotator cuff."[2]

3      The Dodgers contend that Schmidt's labrum, which is anatomically distinct

4  from the rotator cuff, was the primary cause of his disability, and that the 90-day

5  elimination period thus applies to their claim.  They argue that the only reason for

6  Schmidt's June 2007 surgery was his labrum, and that the team doctor performing

7  the surgery decided to repair Schmidt's rotator cuff during the operation simply as

8  preventative maintenance.  In their words, the labrum injury was "independently

9  disabling," in that it would have rendered Schmidt totally disabled even if his

10  rotator cuff had been problem-free (which all agree it was not).

11      The Dodgers also claim that Schmidt's labrum repair had a longer recovery

12  time that his rotator-cuff repair.  According to them, Schmidt's rotator-cuff repair

13  never prevented him from playing and thus never qualified as a "disability" under

14  the Policy.  The implication of their argument is that it makes no sense for the

15  Policy to impose a longer elimination period for disabilities related to the rotator

16  cuff because, in this case, Schmidt's labrum took longer to heal.

17      The evidence will show at trial that, in fact, rotator-cuff injuries take much

18  longer than labrum injuries to heal – and it is thus not surprising for the Policy to

19  include a special condition limitation for disabilities related to Schmidt's right

20  rotator cuff but not his labrum, even though both were known to be injured before

21  Schmidt signed with the Dodgers.   The evidence will also show that Schmidt's

22  rotator cuff was at least in part what precipitated the need for his surgery.  Indeed,

23  even a cursory review of the medical records and the conclusions of the Dodgers'

24  own team doctor leading up to the surgery reveal that both the rotator cuff and

25  labrum were damaged and required surgical attention.

26

27

28

_____
[2] 182 days is the presumed length of a regular season, as explained in the Policy.
(Policy at p. 6 ("Benefit Payable").)

CV-08-08082 JFW (CTx)
DEF.'S MOTION FOR
SUMMARY JUDGMENT

1    But, for purposes of this motion, ACE will accept the Dodgers' factually

2  inaccurate contentions that: (1) Schmidt's labrum tear was "independently

3  disabling"; and (2) the labrum repair required a longer recovery time than the

4  rotator-cuff repair.  Even assuming these propositions are true, ACE is still entitled

5  to judgment in its favor on all of the Dodgers' claims.  That is because the Dodgers

6  ignore the plain language of the Policy, in two ways.

7    ***First***, the Policy provides that the 182-day special condition limitation

8  applies if there is "*any* disability resulting from: The right shoulder as pertains to

9  conditions, afflictions and consequences of the rotator cuff."[3]  Nowhere does it say

10  that relatively minor rotator-cuff disabilities (which is how the Dodgers

11  characterize Schmidt's rotator-cuff surgery) are carved out, or that the Dodgers can

12  perform preventative maintenance surgery on the rotator cuff without invoking that

13  limitation, or that the special condition limitation only applies if there are no other

14  "independently disabling" conditions, or that one must compare relative

15  recuperation periods before applying the 182 days.  The Policy says "*any* disability"

16  resulting from rotator-cuff conditions triggers the special condition limitation, and

17  that is what it means.  Here, it is undisputed that Schmidt had a rotator-cuff tear that

18  was surgically repaired and required some period of recuperation.  In fact, medical

19  literature shows that the procedure performed on Schmidt's rotator cuff, even in

20  isolation, would have required at least eight to twelve months of recuperation.[4]

21  Under the Policy's plain language, Schmidt thus had a "disability resulting from:

22  The right shoulder as pertains to conditions, afflictions and consequences of the

23  rotator cuff."

24    To illustrate the point:  If Schmidt had no pain or discomfort in his right

25  shoulder in the months leading up to June of 2007, but nonetheless had surgery to

26  repair the tear in his rotator cuff solely as a precautionary measure, the surgery

27  _____
[3] Policy at p. 5 (emphasis supplied).

28  [4] Hyman Decl. at ¶ 6.

would have rendered him "totally disabled" under the Policy. Schmidt would have been completely and totally unable to participate in his occupation as a professional pitcher during his period of recuperation and rehabilitation.[5] The Dodgers must concede that, in that hypothetical situation, the special condition limitation would apply to any claim the Dodgers made under the Policy. The fact that, in reality, Schmidt also had surgery on his labrum in June 2007, or that he may have needed surgery to repair his labrum, does not change the plain meaning of the Policy, and it does not change the result.

*Second*, the Policy – while it contains two elimination periods – does not require the choice of one over the other when two disabilities are involved. The fact that the Dodgers' team physician chose to repair both Schmidt's labrum and his rotator cuff in the same surgery does not negate the application of the special condition limitation. (Nor does the Dodgers' claim that the labrum injury was the primary cause of Schmidt's disability.) Where, as here, there are two disabilities, one that triggers the 90-day elimination period and the other that triggers the 182-day elimination period, the respective elimination periods must run concurrently under the Policy's plain language.

Had Schmidt only had a disability related to his labrum, ACE would not dispute the application of the 90-day elimination period to the Dodgers' claim. But that is not what happened. Here, Schmidt's rotator cuff and his labrum were both damaged and surgically repaired in June 2007. It is as if, instead of having surgery on two distinct parts of his shoulder, Schmidt had had surgery on his right rotator cuff and his left knee. In that scenario, the disability related to the knee condition unquestionably would trigger the 90-day elimination period, but the disability related to the rotator cuff condition would trigger the 182-day special condition

---

[5] *See* Policy at p. 12, ¶ 20 (definition of "Total Disablement, Totally Disabled or Total Disability").

1    limitation.  So, too, in this case.  The fact that both conditions happen to be located

2    in Schmidt's right shoulder does not change the analysis.

3        Because these are matters having to do with the plain language of the

4    contract, the Court can and should decide them as a matter of law.  The Dodgers

5    would have this Court read into the Policy language that does not exist.  They

6    would have the Policy say that the special condition limitation only applies if the

7    rotator-cuff condition is the only cause of disability, or the primary cause of

8    disability, or the cause of disability with the longer recuperation period.  In essence,

9    they would enter into a different contract entirely.  But, the time to argue all of

10   these points was when the Dodgers accepted returned premium dollars in exchange

11   for the Policy' special condition limitation – not now.  The fact that they are not

12   happy with their contract does not mean that this Court can or should rewrite the

13   Policy to add language that is not there.

14       Under the Policy's plain language, ACE was justified in applying the 182-

15   day special condition limitation to the Dodgers' claim for disability benefits.  As a

16   result, all of the Dodgers' claims against ACE fail as a matter of law, and ACE is

17   entitled to judgment in its favor on all of the Dodgers' causes of action.  In the

18   alternative, ACE is entitled to partial summary judgment in its favor on the narrow

19   legal issue of which party bears the burden of persuasion on the question of whether

20   the applicable elimination period has been met in this case.

21   **II.    STATEMENT OF FACTS**

22       **A.    The Policy.**

23       In December 2006, the Dodgers signed free-agent Schmidt to a three-year,

24   $47 million contract.  (Statement of Uncontroverted Facts at ¶ 1.)  Schmidt came to

25   the Dodgers from the San Francisco Giants with an impressive pitching record –

26   having tied a 102-year-old Giants-franchise record in the 2006 season by striking

27   out 16 batters in one game, for example.  (*Id.*)  But he also came with a history of

28   problems relating to his right shoulder.  Over the course of the 2006 season, the

CV-08-08082 JFW (CTx)
DEF.'S MOTION FOR
SUMMARY JUDGMENT

Giants' records show he had complained repeatedly about and received treatment for pain, soreness, and stiffness in his pitching shoulder.  (*Id.* at ¶ 3.)  An MRI of the shoulder taken in March 2006 showed tears in the rotator cuff and labrum, among other conditions.  (*Id.* at ¶ 4.)

The Dodgers sought disability insurance coverage for Schmidt, "[i]n order to protect themselves against the risk that Mr. Schmidt might become disabled from performing during the period of his contract."  (*Id*. at ¶ 5.)  On the first day of spring training, February 24, 2007, conditional coverage was bound under an "Employer Purchased Athlete's Individual Total Disability Insurance Policy" issued by ACE.[6]  (*Id.* at ¶ 6.)  Under the terms of the Policy, the Dodgers are entitled to between $63,000 and $66,000 for every day that Schmidt is "Totally Disabled" (as that term is defined in the Policy), subject to the terms, conditions, and exclusions of the Policy.  (*Id.* at ¶ 7.)  One of the conditions of coverage is a 90-day elimination period, which is defined in the Policy as "the number of Regular Season days at the commencement of each period of Total Disablement during which no benefits are due or payable."[7]  (*Id.* at ¶ 8.)  Before the Dodgers are entitled to benefits under the policy, Schmidt must first "satisf[y] the Elimination Period."  (*Id.* at ¶ 10.)

The conditional coverage provided by ACE effective February 24, 2007 was subject, among other things, to ACE's receiving and approving certain information – including a completed application for disability insurance, an independent

---

[6] The policy was negotiated by the Dodgers' insurance broker, Marsh Private Client Life Insurance Services, and ACE's managing general agent, Pro Financial Services, which both underwrote and later administered the policy.  For simplicity's sake, ACE refers above to the Dodgers and ACE, rather than to the parties' agents.

[7] In addition, the Policy provides: "The first forty-five (45) days missed of the ninety (90) day Elimination Period must be consecutive.  All days missed must be caused by the same Accidental Bodily Injury or Sickness or Disease and the total number of days must be accrued within two (2) Regular Seasons of play.  Furthermore, after a period of Total Disability, in the event the Insured returns to Participate in forty-five (45) Regular or Post-season days, any subsequent Total Disability shall be deemed a new injury and subject to a new Elimination Period." (*Id.* at ¶ 9.)

orthopedic surgeon's report, MRIs of Schmidt's right shoulder and elbow, Schmidt's training notes from the previous twelve months, and a copy of Schmidt's spring training physical.  (*Id.* at ¶ 11.)  These materials, once received, provided ACE with information about Schmidt's right shoulder.  One doctor who reviewed the records for ACE stated that "the right shoulder should be of concern to Underwriters relating to the rotator cuff," based in part on "the fact that this player had chronic shoulder pain during the 2006 season requiring treatment including three cortisone injections, as well as oral Prednisone."  (*Id.* at ¶ 12.)

By letter dated April 23, 2007, the parties added to the elimination period in the Policy a "special condition limitation" relating to the rotator cuff.  (*Id.* at ¶ 13.)  The special condition limitation reads:

Special Condition Limitation

A MINIMUM ONE HUNDRED EIGHTY-TWO (182) CONSECUTIVE REGULAR SEASON DAY ELIMINATION PERIOD will apply for any disability resulting from:

*The right shoulder as pertains to conditions, afflictions and consequences of the rotator cuff.*

Elimination Period for the Special Condition Limitation is defined as the number of Regular Season days at the commencement of each period of Total Disablement during which no benefits are due or payable.  The Elimination Period will not be considered satisfied and no benefits will be due or payable under this Policy for any disability resulting from the conditions and afflictions stated within this limitation, until the Insured has missed one hundred eighty-two (182) consecutive Regular Season days.

(*Id.* at ¶ 14.)  ACE's April 23, 2007 letter stated that this special condition limitation would apply "*in addition to* the standard Policy Elimination Period of Ninety (90) [Forty-Five (45) Consecutive] Regular Season Days."[8]  (*Id.* at ¶ 15 (emphasis supplied).)

_____
[8] At the Dodgers' request, ACE explained the reasons why the special condition

1   In exchange for adding the special condition limitation, ACE reduced the

2   Dodgers' premium on the Policy by five percent.  (*Id.* at ¶ 18.)  On April 24, 2007,

3   ACE returned to the Dodgers a portion of their first premium installment

4   "representing the return premium on this case."  (*Id.* at ¶ 19.)

5   **B.   Schmidt's disability.**

6   After signing with the Dodgers, Schmidt continued to experience soreness,

7   pain, and stiffness in his right shoulder.  (*Id.* at ¶ 20.)  According to the Dodgers'

8   records, he first reported discomfort on April 16, 2007.  (*Id.* at ¶ 21.)  An MRI

9   taken on the same day showed, according to the reviewing doctor, "[a]t least 60%

10  partial thickness articular surface tear" in his rotator cuff and "fraying" of his

11  labrum.[9]  (*Id.* at ¶ 22.)  The Dodgers put Schmidt on the disabled list, retroactive to

12  April 15, 2007.  (*Id.* at ¶ 24.)  He missed the next 45 games of the season.  (*Id.* at ¶

13  25.)  During this period, the Dodgers' records state that their medical and training

14  staff treated Schmidt's shoulder with injections, anti-inflammatories, and physical

15  therapy.  (*Id.* at ¶ 26.)

16  Schmidt returned to the Dodgers' lineup on June 5, 2007, but records the

17  Dodgers have produced state he continued to feel pain and discomfort in his right

18  shoulder.  (*Id.* at ¶ 27.)  On June 17, 2007, the Dodgers put Schmidt back on the

19  disabled list.  (*Id.* at ¶ 28.)  A June 18, 2007 letter from Dr. Neal ElAttrache, the

20  Dodgers' team physician, noted that Schmidt was "having pain in his right shoulder

21  despite rest, rehabilitation, and subacromial injections."[10]  (*Id.* at ¶ 29.)  The letter

22

23  ───────────────

    limitation had been added to the policy, detailing the aspects of Schmidt's medical
    history that were of concern.  (*Id.* at ¶ 16.)  In subsequent communications, the
24  Dodgers' insurance broker noted "the impact the limitation has in this case."  (*Id.* at
    ¶ 17.)

25  [9] Schmidt's March 2006 MRI had shown a tear in the rotator cuff that, according to
    the doctor who reviewed the MRI, was "clearly less than 50% of the overall tendon
26  thickness."  (*Id.* at ¶ 23.)

27  [10] "Subacromial" injections are injections placed under the "acromium process,"
    which is a part of the shoulder.  <u>Stedman's Medical Dictionary</u> 18, 1714 (27th ed.
28  2000).

CV-08-08082 JFW (CTx)
DEF.'S MOTION FOR
SUMMARY JUDGMENT

1  went on to explain that Dr. ElAttrache had "discussed the diagnosis once again with

2  [Schmidt]." (*Id.* at ¶ 30.)  Specifically, Dr. ElAttrache's letter stated he had

3  discussed the "deep partial-thickness" tear in Schmidt's "supraspinatus" (one of

4  four rotator cuff muscles) and the tear in his labrum, among other things.  (*Id.* at

5  ¶ 31.)  The letter noted that Schmidt had "labral signs on examination" (*i.e.*, signs

6  of a labral injury) and that he "certainly does have some rotator cuff signs on

7  resisted external rotation." (*Id.* at ¶ 32.)  Dr. ElAttrache's letter concluded by

8  recommending diagnostic arthroscopy – in other words, surgery – for, among other

9  things, "inspection of the supraspinatus tendon with debridement versus partial

10 repair if indicated" and "inspection of the labrum with debridement and possible

11 repair if indicated." (*Id.* at ¶ 33.)

12        In a June 18, 2007 pre-operative report, Dr. ElAttrache described the

13 "planned procedure" as follows: "Right shoulder diagnostic arthroscopy,

14 debridement versus repair of the rotator cuff, debridement versus repair of the

15 labrum, possible subacromial decompression, possible distal clavicle resection."

16 (*Id.* at ¶ 34.)  The medical report states he assessed Schmidt's condition as having a

17 number of causes, among them the tears in Schmidt's rotator cuff and labrum.  (*Id.*

18 at ¶ 35.)

19        Dr. ElAttrache performed Schmidt's arthroscopic surgery on June 20, 2007.

20 (*Id.* at ¶ 36.)  His operative report lists, among both the preoperative and

21 postoperative diagnoses, Schmidt's "partial-thickness rotator cuff tear" and his

22 "superior and posterior labral tear." (*Id.* at ¶ 37.)  It describes the procedures he

23 performed during the surgery as follows:

24        "PROCEDURES PERFORMED:

25
26        1. Arthroscopic rotator cuff repair.
        2. Arthroscopic subacromial bursectomy with arthroscopic
27           debridement subacromial space and partial acromioplasty.
        3. Arthroscopic posterior superior labral repair, right shoulder."
28

1   (*Id.* at ¶ 38.)  According to Dr. ElAttrache's operative report, the surgical repair to

2   the rotator-cuff tear involved inserting an anchor into the bone to tie down the

3   tendon, and then repairing the tear by suturing it.  (*Id.* at ¶ 39.)  Medical literature

4   states that such rotator cuff surgery, even taken alone, would have required an elite

5   pitcher like Schmidt to recuperate for at least eight to twelve months before

6   returning to pitching in the major leagues.  (*Id.* at ¶ 40.)

7           **C.    The Dodgers' claim for disability benefits.**

8           In late August 2007, the Dodgers submitted a claim for disability benefits to

9   ACE.  (*Id.* at ¶ 41.)  After reviewing the claim, ACE acknowledged receiving the

10  Dodgers' Proof of Disability form and the attached medical records, and asked the

11  Dodgers "to send in regular updates and medical reports in regards to this injury so

12  that we may track the Insured's rehabilitation progress in the event he meets the one

13  hundred and eighty-two (182) consecutive day Special Condition Limitation on the

14  player's right shoulder as pertains to conditions, afflictions and consequences of the

15  rotator cuff."  (*Id.* at ¶ 42.)

16          Three-and-a-half months later, the Dodgers informed ACE that they did not

17  agree with ACE's "evident conclusion that the 182-day period is applicable to Mr.

18  Schmidt's disability."  (*Id.* at ¶ 43.)  They requested that ACE reevaluate the claim.

19  (*Id.* at ¶ 44.)  The Dodgers stated the cause of Schmidt's disability was "damage to

20  his right labrum, bursa, and biceps tendon" – in other words, "significant damage to

21  his right shoulder other than injury to his rotator cuff."  (*Id.* at ¶ 45.)  They thus

22  posited:

23          Because Mr. Schmidt's disability is a result of injury to his labrum,
24          biceps tendon and bursa, which injuries are not subject to the "special
            limitation" provision, the 182-day elimination period does not apply.
25          Rather, the 90-day period for all other disabilities, including those
26          resulting from injuries to the labrum, biceps tendon and bursa, applies.

27  (*Id.* at ¶ 46.)

28

1    Following the Dodgers' objections, ACE submitted the claim to a third-party

2    peer-review service for evaluation.  (*Id.* at ¶ 47.)  The peer review found that

3    Schmidt "had a combination of right shoulder problems, including a rotator cuff

4    problem, which required repair, as well as aspects of the posterior superior labrum

5    that required repair."  (*Id.* at ¶ 48.)  Based on these findings, ACE reiterated its

6    position that the special condition limitation applied to the Dodgers' claim.  (*Id.* at

7    ¶ 49.)  ACE explained:

8
9         Our position is and remains that in order for benefits to be considered
          for payment under this policy the player must first satisfy the
10        requirements of the policy.  One such requirement is to satisfy the
          required elimination period.  Under the elimination period within this
11        insurance policy there is a special condition limitation clause which
          was agreed to by the Los Angeles Dodgers and ACE's appointed
12        broker when this policy was underwritten and issued.  This special
          condition limitation clause specifically states that if a disability results
13        from the right shoulder as pertains to conditions, afflictions and
          consequences of the rotator cuff then a minimum 182 consecutive
14        regular season day elimination period would apply.
15
16        Based on the medical records presented and reviewed and your own
17        acknowledgement that Mr. Schmidt had rotator cuff surgery on his
          right shoulder the 182 consecutive regular season day elimination
18        period is appropriate for this claim.

19   (*Id.* at ¶ 50.)
20
21        The Dodgers and ACE continued to disagree over the application of the

     special condition limitation to the Dodgers' claim.  On July 31, 2008, the Dodgers
22
     forwarded to ACE a declaration from team doctor ElAttrache to support their
23
     position that Schmidt's labral tear was "by itself, a disabling and potentially career-
24
     ending injury."  (*Id.* at ¶ 51.)  Dr. ElAttrache stated that Schmidt's disability was
25
     "attributable to his labral injury and repair."  (*Id.* at ¶ 52.)  He echoed the Dodgers'
26
     contention that "the injury to Mr. Schmidt's labrum was independently disabling
27
     from any injury to his rotator cuff" – adding that, "[e]ven if the only injury to Mr.
28

CV-08-08082 JFW (CTx)
DEF.'S MOTION FOR
SUMMARY JUDGMENT

1   Schmidt had been to his labrum, the resulting injury would have lasted a minimum

2   of nine months to one year." (*Id.* at ¶ 53.)  Dr. ElAttrache also attempted to

3   minimize the work he had chosen to perform on Schmidt's rotator cuff during the

4   June 2007 surgery, stating that "the rotator cuff repair [he] performed was only

5   partial" and that he "intentionally did not perform a total or full thickness rotator

6   cuff repair because a total repair was not necessary to allow Mr. Schmidt to return

7   to his occupation as a professional pitcher . . . ." (*Id.* at ¶ 54.)  He nonetheless

8   declared that Schmidt's June 2007 surgery comprised a number of procedures,

9   including both "a partial thickness repair of the rotator cuff" and "a labral repair."

10  (*Id.* at ¶ 55.)

11        On June 17, 2008, upon satisfaction of the 182-day special condition

12  limitation, ACE began making payments to the Dodgers under the Policy.  (*Id.* at

13  ¶ 56.)  ACE has continued to make payments to the Dodgers.  (*Id.* at ¶ 57.)  To date,

14  ACE has paid the Dodgers $11,114,076 in benefits.  (*Id.* at ¶ 58.)

15        **D.     The Dodgers' suit.**

16        On December 8, 2008, the Dodgers filed suit against ACE.  (*Id.* at ¶ 59.)

17  Their Complaint alleges breach of contract, breach of the covenant of good faith

18  and fair dealing, deceit, and unfair business practices.  (*Id.* at ¶ 60.)  The Complaint

19  is premised on the Dodgers' allegations that "[t]he Special Condition Limitation

20  does not apply to Mr. Schmidt's disability" and that ACE has therefore "den[ied]

21  the Dodgers full recovery under the Policy." (*Id.* at ¶ 61.)  The Dodgers seek

22  declaratory relief, compensatory damages for the additional days of coverage

23  allegedly due under the Policy, punitive damages, and an order permanently

24  enjoining ACE from aiding and abetting unfair business practices.  (*Id.* at ¶ 62.)

25        ACE now moves for summary judgment on all of the Dodgers' causes of

26  action.  For the reasons stated below, ACE is entitled to judgment in its favor as a

27  matter of law.  In the alternative, ACE is entitled to partial summary judgment in its

28

CV-08-08082 JFW (CTx)
DEF.'S MOTION FOR
SUMMARY JUDGMENT

favor on the discrete legal issue of which party bears the burden of proving that the applicable elimination period has been satisfied.

### III. ACE IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR ON ALL OF THE DODGERS' CAUSES OF ACTION, ON THE GROUND THAT THE SPECIAL CONDITION LIMITATION APPLIES TO THE DODGERS' CLAIM AS A MATTER OF LAW.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted when "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c). Here, ACE is entitled to summary judgment on all of the Dodgers' claims, for two reasons:

*First*, under the plain language of the Policy, Schmidt had a "disability resulting from: The right shoulder as pertains to conditions, afflictions and consequences of the rotator cuff." It is undisputed that Schmidt had a rotator cuff tear that was surgically repaired in June 2007 and that following that surgery he required a period of recuperation. The special condition limitation thus applies to the Dodgers' claim for disability benefits.

*Second*, the fact that Schmidt had a concurrent labrum injury that triggered the 90-day elimination period does not erase the fact that Schmidt suffered a "disability resulting from: The right shoulder as pertains to conditions, afflictions and consequences of the rotator cuff." The elimination periods are not mutually exclusive; nothing in the Policy requires one to choose one over the other. The elimination periods can – and, in this case, did – run concurrently. Therefore, the Dodgers' claim that Schmidt's labrum injury was the primary cause of his disability is irrelevant. Even if the labrum was the predominant cause, which ACE disputes but will concede solely for purposes of this motion, the fact remains that Schmidt also had a disability related to his rotator cuff, and that the special condition limitation applies.

These questions – whether Schmidt suffered a "disability resulting from: The right shoulder as pertains to conditions, afflictions and consequences of the rotator cuff" and, if so, whether the special condition limitation and the 90-day elimination period ran concurrently – are governed by plain contract language, which the Court can and should apply as a matter of law.

### A.   The Court must apply ordinary contract-interpretation principles in order to give effect to the Policy's plain meaning.

Interpretation of an insurance policy is a question of law to be decided by the Court. *AIU Ins. Co. v. Super. Ct. (FMC Corp.)*, 51 Cal. 3d 807, 818, 274 Cal. Rptr. 820, 828-29 (1990); *accord Powerine Oil Co., Inc. v. Super. Ct. (Cent. Nat'l Ins. Co. of Omaha) (Powerine II)*, 37 Cal. 4th 377, 390, 33 Cal. Rptr. 3d 562, 571 (2005). Although "insurance contracts have special features," the California Supreme Court has consistently held that "they are still contracts to which the ordinary rules of contractual interpretation apply." *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 868, 77 Cal. Rptr. 2d 107, 114 (1998) (quoting *Bank of the West v. Super. Ct. (Indus. Indem. Co.)*, 2 Cal. 4th 1254, 1264, 10 Cal. Rptr. 2d 538, 544-45 (1992).

Under California law, "[t]he fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Powerine II*, 37 Cal. 4th at 390. In *AIU*, the California Supreme Court explained:

> Under [California] statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. Such intent is to be inferred, if possible, solely from the written provisions of the contract. The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage," controls judicial interpretation. Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.

*AIU*, 51 Cal. 3d at 821-22 (citing CAL. CIV. CODE §§ 1636, 1638, 1639, 1644).

**B.**   **Schmidt had a disability "resulting from: The right shoulder as pertains to conditions, afflictions and consequences of the rotator cuff."**

The critical language in the special condition limitation, and the language that this Court must interpret, is the phrase "any disability resulting from: The right shoulder as pertains to conditions, afflictions and consequences of the rotator cuff." There are two subparts to the analysis.  First, is Schmidt's rotator-cuff damage and the associated surgery a "condition," "affliction," or "consequence" of the rotator cuff?  Second, was there any disability "resulting from" such a condition, affliction, or consequence?

The answer to the first question is yes.  At a minimum, the tear in Schmidt's rotator cuff is a "condition" and an "affliction" of the rotator cuff, as those terms are ordinarily understood.  *AIU*, 51 Cal. 3d at 822 (citing CAL. CIV. CODE § 1644); *see also* CAL. CIV. CODE § 1644 ("The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.").  And, the surgical repair to the rotator cuff was certainly a "consequence" of the rotator cuff.  *Id.*

The answer to the second question is also yes.  Conditions of Schmidt's labrum and rotator cuff both meant he could not play.  But the fact that he had disability from his labrum cannot negate whether he also had "any disability resulting from" his rotator cuff.  He did.  Indeed, assuming, just for the sake of argument, that Schmidt had not experienced any pain in his shoulder in early 2007, but that Dr. ElAttrache had nonetheless decided to operate solely on Schmidt's rotator cuff as a preventative measure, Schmidt would have had to recuperate for a substantial period of time. [11]  (Hyman Decl. at ¶ 6.)  He would have been "totally disabled" as that term is defined in the Policy.

---

[11] The Dodgers claim, in their motion in *limine*, that ACE believes Schmidt's disability was caused by his June 2007 surgery.  That is not the case at all.  ACE will prove at trial, as the medical records show, that Schmidt's rotator cuff was

1    The Dodgers may claim, as they have done in the past, that ACE's reading of

2    the special condition limitation would mean that *any* injuries to Schmidt's right

3    shoulder would trigger the application of the special condition limitation.  Not so.

4    The special condition limitation only applies when the terms in the provision are

5    met – when there is a "disability resulting from: The right shoulder as pertains to

6    conditions, afflictions and consequences of the rotator cuff."  If the rotator cuff is

7    not implicated, neither is the 182-day elimination period.  But, that is not the case

8    here.  It is undisputed that the very part of the right shoulder listed in the special

9    condition limitation – the rotator cuff – was operated on and required a substantial

10   amount of rehabilitation time.

11   The Dodgers may also argue, as they have in the past, that ACE's reading

12   means that simply "touching" the rotator cuff would trigger application of the

13   special condition limitation.  That is also false.  Without a condition, affliction, or

14   consequence of the rotator cuff that results in a disability, the special condition

15   limitation is inapplicable.  But, again, here it is undisputed that Dr. ElAttrache

16   performed surgery on Schmidt's rotator cuff to repair the tear in the muscle.  Under

17   the plain language of the Policy, Schmidt had a "disability resulting from: The right

18   shoulder as pertains to conditions, afflictions and consequences of the rotator cuff."

19

20

21

22

23

24

---

damaged prior to the surgery, and that the condition contributed, at least in part, to
the pain that prevented him from pitching.  But, ACE need not prove (or even
address) the original source of Schmidt's pain for purposes of this motion.  The
point here is that – leaving aside the parties' factual dispute about what the medical
records showed before the June 2007 surgery and accepting *arguendo* the Dodgers'
contention that the labrum was "independently disabling" – the fact remains that
Schmidt's rotator cuff was repaired during his surgery and required a period of
recuperation.

CV-08-08082 JFW (CTx)
DEF.'S MOTION FOR
SUMMARY JUDGMENT

**C.**     **The 90-day elimination period and the 182-day special condition limitation period ran concurrently.**

The elimination period and the special condition limitation read, in full, as follows:

Elimination Period:

*Ninety (90) [Forty-five (45) Consecutive] Regular Season Days*

Elimination Period Limitation:

*The Elimination Period is defined as the number of Regular Season days at the commencement of each period of Total Disablement during which no benefits are due or payable.  The first forty-five (45) days missed of the ninety (90) day Elimination Period must be consecutive. All days missed must be caused by the same Accidental Bodily Injury or Sickness or Disease and the total number of days must be accrued within two (2) Regular Seasons of play.  Furthermore, after a period of Total Disability, in the event the Insured returns to Participate in forty-five (45) Regular or Post-season days, any subsequent Total Disability shall be deemed a new injury and subject to a new Elimination Period.*

Special Condition Limitation

A MINIMUM ONE HUNDRED EIGHTY-TWO (182) CONSECUTIVE REGULAR SEASON DAY ELIMINATION PERIOD will apply for any disability resulting from:

*The right shoulder as pertains to conditions, afflictions and consequences of the rotator cuff.*

Elimination Period for the Special Condition Limitation is defined as the number of Regular Season days at the commencement of each period of Total Disablement during which no benefits are due or payable.  The Elimination Period will not be considered satisfied and no benefits will be due or payable under this Policy for any disability resulting from the conditions and afflictions stated within this limitation, until the Insured has missed one hundred eighty-two (182) consecutive Regular Season days.

(Policy at 4-5.)

1   Nowhere in this language – indeed, nowhere in the Policy – does it state that

2   one elimination period must be chosen over the other.  Nor is there anything in the

3   Policy to suggest that if, as the Dodgers claim, there also is an "independently

4   disabling" injury not involving the rotator cuff, the special condition limitation

5   should be ignored.  The Dodgers' position reads into the Policy a term that does not

6   exist – in direct contravention of the rule that a contract must be interpreted to give

7   effect to the mutual intention of the parties at the time the contract is formed by

8   relying on the clear and explicit meaning of the language in the contract.  *AIU*, 51

9   Cal. 3d at 822.

10   The correct approach – the one consistent with *AIU* – is to apply the 90-day

11   and 182-day elimination periods concurrently.  Schmidt's labrum condition created

12   a disability that triggered the 90-day elimination period.  His rotator-cuff condition

13   created a disability that triggered the 182-day elimination period.  These periods ran

14   concurrently – meaning that, for purposes of calculating when disability benefits

15   would become due and payable, only the 182-day period matters.  The fact that the

16   90-day elimination period was implicated does not negate the fact that Schmidt also

17   had surgery on his rotator cuff, which triggered the longer special condition

18   limitation.

19   For all of these reasons, ACE is entitled to summary judgment in its favor as

20   a matter of law on all of the Dodgers' causes of action.

21   **IV.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT ACE'S**
22   **MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE**
     **BURDEN OF PROOF.**

23   If the Court denies ACE's request for summary judgment in its favor, the

24   question of who bears the burden of persuasion on the applicable elimination period

25   will become critically important to this litigation.  That question has two subparts.

26   First, and most fundamentally, do the elimination periods in the Policy – the regular

27   90-day elimination period and the 182-day special condition limitation – qualify as

28   conditions of coverage or exclusions?  Second, does the party who bears the burden

of persuasion have an obligation to prove that the *correct* elimination period has been satisfied?  These are also questions of policy language that can and should be decided as a matter of law.

### A.   The elimination periods in the Policy are conditions of coverage, not exclusions.

Under California law, the burden is on the insured to show that conditions of coverage in an insurance policy have been met.  *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188, 77 Cal. Rptr. 2d 537, 539 (1998) (burden is on the insured in a coverage dispute to establish that the claim is "within the basic scope of insurance coverage"); *Wright v. Paul Revere Life Ins. Co.*, 291 F. Supp. 2d 1104, 1111 (C.D. Cal. 2003) (explaining burdens of proof under California insurance law in first-party disability insurance coverage action); *see also Gin v. Pennsylvania Life Ins. Co.*, 134 Cal. App. 4th 939, 943, 36 Cal. Rptr. 3d 571, 574 (2005) (where the question is the scope of coverage under a disability insurance policy, the burden is on the insured to show he or she is disabled within the terms of policy).  On the other hand, the insurer bears the burden to show that an exclusion applies.  *Aydin*, 18 Cal. 4th at 1188; *accord Wright*, 291 F. Supp. 2d 1111.

Therefore, to determine which party bears the burden of proving that the applicable elimination period has been met in this case, the Court must first decide whether the elimination periods in the Policy are conditions of coverage or exclusions.  As explained below, they are conditions of coverage.  The Dodgers thus bear the burden of showing the applicable elimination period has been satisfied.

### 1.   Under the Policy's plain language, the elimination periods are properly categorized as conditions of coverage.

The special condition limitation does not, on its face, exclude coverage.  It simply provides that, for claims involving "any disability resulting from the right shoulder as pertains to conditions, afflictions and consequences of the rotator cuff" in Schmidt's right shoulder, benefits are only payable after a 182-day elimination

1   period is satisfied.  In other words, the special condition limitation sets a condition

2   that must be met, in certain circumstances, before benefits will be payable under the

3   Policy.  This condition is in some respects similar to a deductible.   Like a

4   deductible, it sets a threshold (of time, as opposed to money) after which benefits

5   will be paid.  It is the insured's obligation to meet that threshold.[12]

6          Applying the "ordinary rules of contractual interpretation" applicable to

7   insurance contracts, *Foster-Gardner, Inc.*, 18 Cal. 4th at 868, the special condition

8   limitation qualifies as a condition of coverage, rather than an exclusion.  As one

9   leading treatise has noted, "[c]onditions are usually precedent to [a duty to perform

10  under the contract] and must occur to trigger or activate the duty contained in the

11  promise."  1 Eric Mills Holmes & Mark S. Rhodes, Holmes's Appleman on

12  Insurance § 4.30 (2d ed. 1996).  Here, the special condition limitation must be met

13  to "trigger" ACE's duty to pay policy benefits, where a rotator-cuff disability is

14  involved.  The plain language of the provision – and the plain language of the 90-

15  day elimination period – support the conclusion that the elimination periods in the

16  Policy are conditions of coverage rather than exclusions.

17         This reading is also in keeping with the Policy as a whole.  Part I of the

18  Policy provides that ACE will pay disability benefits only if Schmidt "satisfies the

19  Elimination Period" contained in the policy "Schedule."   (Policy, p. 3.)  Because

20  Schmidt must "satisfy" the elimination period, the only plausible reading of the

21  Policy is that the elimination periods are conditions of coverage and that it is the

22

_____

23  [12] There are no California cases that squarely address whether a deductible is a
    condition of coverage or an exclusion.  However, statutory authority provides

24  support for the common-sense proposition that a deductible, which must be met
    before policy benefits can be paid, is a condition of coverage.  *E.g.*, CAL. INS. CODE

25  § 10123.8 (mandating all disability insurance cover treatment for breast cancer and
    providing that certain coverage "shall be subject to the *deductible* and coinsurance

26  *conditions*"); CAL. INS. CODE § 10123.82 (similar provision applicable to
    laryngectomies); CAL. HEALTH & SAFETY CODE § 1367.635 (mandating coverage

27  for prosthetic devices related to mastectomies "subject to the *deductible* and
    coinsurance *conditions* applicable to other benefits"); CAL. HEALTH & SAFETY

28  CODE  § 1367.61 (similar provision applicable to laryngectomies).

Dodgers' burden to prove they have been met.  (Otherwise, the Policy would require ACE to "satisfy" the elimination period.)

The Dodgers argue in their motion *in limine* that the special condition limitation, because it is labeled a "limitation," should be treated in the same way the other "limitations" in the policy are treated – and that all of these provisions are exclusions simply because they contain the word "limitation."  But, as the California Supreme Court has recognized, "it is the function served by policy language" that is determinative.  *Aydin*, 18 Cal. 4th at 1191.  Whether or not provisions are labeled "limitations" is irrelevant; one must examine the function of each provision.  And, in the case of the elimination periods in the Policy, the language plainly states conditions that must be satisfied by the Dodgers to trigger Policy benefits.

> **2.    Case law also supports a finding that elimination periods are conditions of coverage.**

In *Mitchell v. Ace American Insurance Co.*, the Fifth Circuit Court of Appeal analyzed a professional athlete's disability insurance policy and, in doing so, called the elimination period in the policy an "essential condition of coverage."  265 F. App'x 420, 424 (5th Cir. 2008) (per curiam).  The court found that, because the athlete had not satisfied the elimination period, the district court was right to have entered summary judgment on plaintiff's breach of contract claim.  *Id.*

Other courts, in California and elsewhere, have similarly held that an insured has the burden of proving he has been continuously disabled throughout an elimination period in order to be eligible for coverage.  *See Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 736 (9th Cir. 2006) (construing a long-term disability policy governed by ERISA "as requiring [the insured] to demonstrate, consistent with its plain language, that he could not perform the material tasks of his job during [the elimination period] because of his serious heart condition"); *Kushner v. Lehigh Cement Co.*, 572 F. Supp. 2d 1182, 1189 (C.D. Cal.

2008) (explaining the insured "must demonstrate he is continuously disabled during the 180-day elimination period to be eligible for benefits" under a long-term disability policy governed by ERISA); *Allenby v. Westaff, Inc.*, No. C 04-2423 TEH, 2006 WL 3648655, at *1 (N.D. Cal. Dec. 12, 2006) (explaining the insured "must also show that she remained disabled continuously for a 90-day 'elimination period' commencing on the date the disability is established" in order to receive benefits under a long-term disability policy governed by ERISA); *see also* 17A Lee R. Russ & Thomas F. Segalla, <u>Couch on Insurance 3d</u> § 254:45 (3d ed. 2001) ("If the policy provides that disability must have existed for a specified period in order to entitle the insured to benefits, the burden is upon the plaintiff to show that the condition did exist for that period."). Because the insured bears the burden of proving conditions of coverage in a policy have been met, these cases implicitly rest on a finding that an elimination period is a condition of coverage, not an exclusion.

### 3. It makes sense, as a matter of policy, for the Dodgers to bear the burden of persuasion.

There are certain circumstances where it makes sense to allocate the burden of persuasion to the insured, because he has more, and better access to, information. *See*, *e.g.*, *Aydin*, 18 Cal. 4th at 1193-94 (1998) (finding that public policy supports placing the burden of proof on the insured to establish coverage because "it is only common sense that the insured will have greater information and knowledge about the insured's property and/or operations conducted by the insured which may result in damage or liability") (alternation and internal quotation marks omitted); *Harrow Prods. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1020 (6th Cir. 1995) (finding it especially appropriate to impose the burden of proof on the insured where the insured "is the party most likely to have the relevant information about its operations"); *see also* 17A Lee R. Russ & Thomas F. Segalla, <u>Couch on Insurance 3d</u> § 254:5 (3d ed. 2001) ("[T]he burden of proof (risk of non-persuasion) is often

1    cast on a specific party because that party has more information more readily

2    available on the issue.").

3        This is just such a circumstance.  The information regarding Schmidt's injury

4    and resulting disability was in the hands of the Dodgers' medical and training

5    personnel.  Schmidt is a Dodgers employee.  Dodgers personnel made the

6    diagnosis, and they provided the treatment.  The team physician, Dr. ElAttrache,

7    operated on Schmidt and chose to repair both his rotator cuff and his labrum during

8    the surgery.  The Dodgers put Schmidt on the disabled list and into rehabilitation

9    assignments.  The information is in their control, and the relevant actions were

10   taken by them.  Under these conditions, the only equitable outcome is to allocate

11   the burden of persuasion to the Dodgers.

12   **B.    The party that bears the burden of proof also has an obligation to prove that the right elimination period has been satisfied.**

13

14       For the reasons explained above, the elimination periods in the Policy are

15   conditions of coverage, not exclusions.  Thus, the Dodgers bear the burden of

16   proving that they have been met in this case.  They may try to avoid the

17   implications of the Court's ruling by arguing that they have met their burden by

18   showing that the 90-day elimination Period – as opposed to the 182-day special

19   condition limitation – has been satisfied.  But, implicit in the insured's obligation to

20   bring a claim within the scope of coverage, there must also be a requirement that it

21   prove satisfaction of the correct conditions.  *Cf. Modern Dev. Co. v. Navigators Ins.*

22   *Co.*, 111 Cal. App. 4th 932, 942, 4 Cal. Rptr. 3d 528, 535 (2003) ("[W]hen the

23   accidental nature of an event is a condition of coverage, the burden is on the insured

24   to bring the claim within the scope of coverage.  That burden is not met merely by

25   showing that the event happened in an unexplained and presumably accidental

26   manner.").  Otherwise, the requirement that an insured satisfy all conditions of

27   coverage would be meaningless.  Because it is the insured's burden to bring a claim

28

CV-08-08082 JFW (CTx)
DEF.'S MOTION FOR
SUMMARY JUDGMENT

1   within the scope of coverage, the Dodgers bear the burden of proving that the

2   *correct* elimination period has been met.

3   **V.     CONCLUSION**

4          For the reasons stated above, ACE respectfully requests that the Court grant

5   summary judgment in its favor on all of the Dodgers' claims.  In the alternative,

6   ACE requests that the Court grant partial summary judgment in its favor on the

7   burden-of-proof issue, finding that the Dodgers bear the burden of persuasion on

8   the question of whether the correct elimination period has been satisfied in this

9   case.

10

11

12          Dated:  July 13, 2009                    RICHARD B. GOETZ
                                                    CATALINA J. VERGARA
13                                                  O'MELVENY & MYERS LLP

14

15                                                  By: */s/ Richard B. Goetz*
                                                         Richard B. Goetz
16
                                                    Attorneys for Defendant
17                                                  ACE American Insurance Company

18

19

20

21

22

23

24

25

26

27

28